**SEABOCK PRICE APC**
Dennis Price SBN 279082
Amanda Seabock SBN 289900
Christopher A. Seabock SBN 279640
117 E. Colorado Blvd., Ste. 600
Pasadena, California 91105
Phone: 323-616-0490
amanda@seabockprice.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Breanna Ballard,**<br><br>    Plaintiff,<br><br>    v.<br><br>**Golden Corona Square, LLC,** a California Limited Liability Company;<br>**Shades of Afrika,** a California Corporation **dba I E Shades of Afr**ika;<br>**Charles Johnson,**<br>and Does 1-10<br><br>    Defendant(s). | Case Number:<br><br>**Complaint for Damages and Injunctive Relief for Violations of:**<br>Americans with Disabilities Act, Unruh Civil Rights Act, Disabled Persons Act<br><br><br>**DEMAND FOR JURY TRIAL** |

1

Complaint, Shades of Afrika

Plaintiff Breanna Ballard alleges the following upon information and belief based upon investigation of counsel, except as to her own acts, which she alleges upon personal knowledge:

## INTRODUCTION

1. This claim involves intentional and overt discrimination, retaliation and threats received by Breanna Ballard that inhibited her from having full and equal access to the Golden Corona Square strip mall in Corona, California.

2. Signed into law on July 26, 1990, the Americans with Disabilities Act was a landmark piece of legislation that promised equal access to disabled individuals. Hailed as a long overdue "independence day" by President George H.W. Bush at the time of signing, the law recognized that disabled Americans had been overlooked by prior civil rights laws and were entitled to independence and dignity in all aspects of society.

3. Recognizing that the ADA lacked sufficient remedies, the State of California promptly amended the Unruh Civil Rights Act to ensure those who are denied equal rights under the ADA have sufficient motivation and remedies to enforce the law.

4. Plaintiff is a disabled individual and a member of a protected class of individuals guaranteed rights under state and federal laws.

5. Plaintiff visited the Golden Corona Square facility ("Mall") located at 1390 W. 6th St., Ste. 100, Corona, California 92882 in 2022 and encountered discrimination on the basis of her disability.

6. Plaintiff brings this action against Golden Corona Square, LLC, Shades of Afrika dba I E Shades of Afrika, and Charles Johnson ("Defendants") for failure to design, maintain, construct, and operate the Mall in compliance with applicable accessibility laws.

## PARTIES

7. Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of Orange.

8. Defendant Golden Corona Square, LLC owned the real property located at or about 1390 W. 6th St., Ste. 100, Corona, California 92882, in September 2022.

Complaint, Shades of Afrika

9. Defendant Golden Corona Square, LLC owns the real property located at or about 1390 W. 6th St., Corona, California 92882, currently.

10. Defendant Shades of Afrika owned or operated the Shades of Afrika retail store, a place of public accommodation, located at or about 1390 W. 6th St., Ste. 100, Corona, California 92882, in September 2022.

11. Defendant Shades of Afrika owns or operates the place of public accommodation located at or about 1390 W. 6th St., Ste. 100, Corona, California 92882, currently.

12. Defendant Charles Johnson owned or operated the Shades of Afrika retail store, a place of public accommodation, located at or about 1390 W. 6th St., Ste. 100, Corona, California 92882, in September 2022.

13. Defendant Charles Johnson owns or operates the place of public accommodation located at or about 1390 W. 6th St., Ste. 100, Corona, California 92882, currently.

14. Every landlord, tenant, owner or operator of a place of public accommodation is separately charged with compliance with the ADA. 28 CFR § 36.201(b). Liability for noncompliance persists regardless of any contractual apportionment of responsibility between them. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 833-34 (9th Cir. 2000).

15. At all times relevant to this complaint, Defendants had and continue to have an ongoing obligation to assess, identify, and remove all barriers to access where readily achievable to do so, and to implement the most accessible alternative when full compliance is not readily achievable.

16. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such defendants. Plaintiff is informed and believes that each of the defendants herein is responsible in some capacity for the events herein alleged or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the defendants are ascertained.

Complaint, Shades of Afrika

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 1281, *et seq.,* and 28 U.S.C. § 1332.

18. This Court has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, because they are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

19. This Court has personal jurisdiction over Defendants because they conducted and continue to conduct business in the State of California, County of Riverside.

20. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District and Defendants are subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

## FACTUAL ALLEGATIONS

21. Plaintiff suffers from an autoimmune condition that causes muscle spasms and nerve problems that makes it difficult and painful to walk. She is a member of a protected class of individuals guaranteed rights under state and federal law.

22. The Mall is a facility open to the public, a place of public accommodation, and a business establishment as those terms are understood under the Americans with Disabilities Act and Unruh Civil Rights Act.

23. Plaintiff first went to the Mall on September 14, 2022, with the intention to avail herself of its goods, services, privileges, advantages, or accommodations ("Amenities"). Specifically, Plaintiff intended to meet up with a friend from out for town for lunch at Rakki Sushi.

24. The design of the strip mall is a medium sized parking lot with ostensibly accessible parking distributed throughout. Access to the section of the Mall where Rakki Sushi is located requires using a ramp from the parking lot to the elevated sidewalk. There is faint lettering and striping of "NO PARKING" on the ramp, but this lettering has largely faded away.

25. Unfortunately, on the date of Plaintiff's visit, she encountered a vehicle parked on the ramp from the parking lot to the main circulation path. This vehicle was not unoccupied, but instead was operated by a person who would later be identified as Charles Johnson.

26. Plaintiff informed Mr. Johnson that he was blocking the ramp that allowed access to the Mall. Mr. Johnson informed Plaintiff that he was allowed to park there, as he owned an adjoining business. He demonstrated this by going into the Shades of Afrika business located near the ramp.

27. Rather than admit fault, apologize or simply move his car, Mr. Johnson retaliated against Plaintiff by refusing to move and then calling the police, falsely stating that she was blocking his car. Mr. Johnson then left for about half an hour, leaving Plaintiff blocked from her intended destination.

28. Plaintiff was inconvenienced and penalized by Mr. Johnson's actions. She was also put in a state of threat due to Mr. Johnson's misuse of legal process. Mr. Johnson attempted to intimidate Plaintiff into leaving the premises with threat of police response.

29. Invoking police response invites a threat of violence and is inherently coercive. Arrival of police presumes a threat and the atypical nature of disability in police interactions creates a situation that can result in tragic consequences. People with disabilities are often not able to fully follow orders, cooperate, or communicate with police which results in death and injury at rates substantially higher than other populations. At least one study found that nearly half of people killed by police have a disability. Ruderman Family Foundation, *The Ruderman White Paper on Media Coverage of Law Enforcement Use of Force and Disability*, pp. 4, 19 (March 2016) (describing the abuse of a quadriplegic man by police that didn't believe his disability)

30. The threat of and actual misuse of the police to harass and intimidate Plaintiff was morally offensive conduct by Mr. Johnson.

31. This entire interaction occurred due to a policy and maintenance failure by the Mall owner. Golden Corona Square LLC has failed to provide and/or maintain in working and useable condition those features required to provide ready access to persons with disabilities.

32. As a result of this failure, Plaintiff encountered inaccessible routes on September 14, 2022.

33. Businesses are required to provide accessible routes that allow safe and unobstructed access to all shops at a shopping facility such as the Mall. However, the failure to maintain deterrence language and labeling on the ramp encouraged individuals, such as Mr. Johnson, to block the route and use it for his own purposes.

34. Despite the above, and after significant delay, Plaintiff was eventually able to reach the Sushi restaurant after Mr. Johnson finally decided to move his vehicle, and after having to speak with the police about the incident.

35. During investigation of the claim, additional barriers not personally encountered or acknowledged by Plaintiff but pertaining to her disability were discovered:

   a. The design of the parking lot contains numerous violations of ADA standards regarding design of parking facilities including built-up ramps in access aisles, incorrectly designed access aisles, and poor distribution of spaces.
   b. Painting intended to deter individuals from blocking parking spaces had deteriorated to the point of near non-existence.

36. Plaintiff seeks removal of all barriers to access pertaining to her disability.

37. All of barriers identified above are easily removed without much difficulty or expense. They are the types of barriers that patrons should expect to have been removed in the more than thirty years since the ADA became law and should be presumed readily achievable due to ease of removal. However, should full compliance not be readily achievable, there are numerous alternative accommodations that could be made to provide a greater level of access than presently exists.

38. Plaintiff has no ill-will towards Rakki Sushi, and in fact has attempted to return to the location previously, but was deterred by seeing Mr. Johnson on her arrival. Following resolution of this suit, and once assurances are in place that she can do so without retaliation, she intends to return to the location.

39. During litigation, Plaintiff will thoroughly investigate the property and amend the complaint to provide the full scope of remediation required. Plaintiff seeks to have all barriers related to her disability removed. See *Doran v. 7-Eleven*, 524 F.3d 1034 (9th Cir. 2008); *Thurston*

*v. Midvale Corp.*, 39 Cal. App. 5th 634, 653–54 (2019) (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether they personally encountered them).

40. As the ADA has existed since 1990, Plaintiff alleges the above conditions were the result of either a policy failure or systematic negligence such that only policy modifications and regular future audits of the facility and policy modifications can ensure future compliance.

### CALIFORNIA CIVIL CODE § 425.50 COMPLIANCE STATEMENTS

41. In 2015, California implemented Cal. Code Civ. P. § 425.55(b), defining some ADA plaintiffs as "high-frequency litigants" and requiring certain disclosures by some ADA plaintiffs. Plaintiff does not meet the criteria described in this section. Ms. Ballard has not filed 10 or more construction-related accessibility claims in the last 12 months. Additionally, the gravamen of Plaintiff's damages claim invokes morally offensive intentional conduct and a policy claim which does not qualify under the statute.

42. To the extent Plaintiff's *Doran/Chapman* or maintenance claims qualify under the statute, this court should exercise jurisdiction over those claims as they are necessarily included within this claim and severance of those claims would unnecessarily create duplicated litigation predicated on the result of this action.

### I. FIRST CAUSE OF ACTION:
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Title 42 United State Code §§ 12101-12203
### (On behalf of Plaintiff and against all Defendants)

43. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

44. Under the Americans with Disabilities Act, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation are offered on a full and equal basis by anyone who owns, leases, or

operates a place of public accommodation. 42 U.S.C. § 12182(a). Discrimination is defined there as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers may be defined by failure to comply with the ADA Standards.

    c. Where such barrier removal is not readily achievable, the failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative, readily achievable, methods.

    d. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

45. Retaliation against a person who opposes any practice made unlawful under the ADA is an illegal act of retaliation and a separate and independent violation of the ADA. 42 U.S.C. § 12203(a)-(b). The act of calling the police on Plaintiff for notifying Mr. Johnson he was blocking the route was illegal intimidated and retaliatory conduct.

46. When a business provides parking, it must provide accessible parking. 2010 ASASAD Chapter 2 & 5; 2004; 1991 ADAAG Chapter 4.6.

47. Here, despite offering parking, accessible parking has not been provided in conformance with the ADA Standards.

48. When a business provides walkways, paths or other navigable elements, it must provide accessible paths of travel. 2010 ASASAD Chapter 2 & 4; 1991 ADAAG Chapter 4.3.

49. Here, accessible paths of travel have not been provided in conformance with the ADA Standards. As a result of maintenance failures, the deterring language that existed for years has faded into obliteration resulting in a belief by individuals that parking on the access ramp was appropriate.

50. In addition to offering accessible Amenities, a public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

51. The Safe Harbor provisions of the 2010 Standards are not applicable here because the conditions challenged in this lawsuit also do not comply with the 1991 Standards. 28 CFR § 35.151(b)(4)(ii)(C).

52. Here, the failure to ensure that accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

## II. SECOND CAUSE OF ACTION:
## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
### California Civil Code §§ 51-53
### (On behalf of Plaintiff and against all Defendants)

53. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

54. The Unruh Civil Rights Act ("UCRA") guarantees, among other things, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

55. The UCRA provides that any violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f). The failure to maintain the ramp violates 51(f).

56. Shades and Afrika, through Mr. Johnson, intimidated and retaliated against Plaintiff in violation of the ADA, which also violates 51(f).

57. An intentional or morally offensive act of discrimination justifies treble damages. Cal. Civ. Code § 52(a); *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1172 (1991).

58. Defendants' acts and omissions, as herein alleged, have violated the UCRA by, among other things, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

59. A defendant's liability for violations of the Unruh Civil Rights Act entitles a plaintiff to actual damages, as well as treble actual damages or an amount no less than the minimum statutory penalty prescribed by law, for each occasion in which the plaintiff was denied full and equal access. Cal. Civ. Code §§ 52(a); 55.56.

60. Plaintiff seeks actual damages and treble actual damages against Mr. Johnson for his intentional and morally offensive conduct.

### III. THIRD CAUSE OF ACTION:
### VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT
### California Civil Code § 54.1
### (On behalf of Plaintiff and against all Charles Johnson)

61. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

62. Like the Unruh Civil Rights Act, the California Disabled Persons Act ("CDPA") guarantees, among other things, that persons with disabilities are entitled to full and equal access to places of public accommodation and all "places to which the general public is invited" within the jurisdiction of the State of California. Cal. Civ. Code § 54.1(a)(1).

63. The CDPA provides that any violation of the ADA is a violation of the CDPA. Cal. Civ. Code § 54.1(d).

64. Defendants' acts and omissions, as herein alleged, have violated the CDPA by, among other things, denying Plaintiff full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

65. Because the violation of the ADA interfered with the rights of an individual with a disability under §§ 54, 54.1 or 54.2, Mr. Johnson is responsible for statutory damages, i.e., a civil

penalty. Cal. Civ. Code § 54.3. *Ruiz v. Musclewood Prop. Investments, LLC*, 28 Cal.App.5th 15, 21 (2018)

66. Plaintiff seeks actual damages and treble actual damages against Mr. Johnson for his intentional and morally offensive conduct.

**PRAYER**

In light of the above, Plaintiff prays that this Court award damages and provide relief as follows:

67. A determination that Defendants are liable for violations of the Americans with Disabilities Act, Unruh Civil Rights Act, and Disabled Persons Act.

68. For permanent injunctive relief prohibiting further retaliation against Plaintiff by Shades of Afrika and Charles Johnson.

69. For permanent injunctive relief, compelling Defendants to remove all presently existing architectural barriers as required by the Americans with Disabilities Act and the Unruh Civil Rights Act within 90 days of judgment, or another date certain determined to be just by the Court. This shall include, but not be limited to the following barriers encountered by the plaintiff:

   a. Accessible paths of travel inside and outside the Mall, with clear markings to deter parking on accessible routes.
   b. Modification and installation of compliant accessible parking spaces on route that is convenient to access the Mall without passing behind or in front of other vehicles.
   c. Installation of all necessary signage that will enable enforcement of applicable laws against individuals improperly parking in the designated parking space or access aisle.

70. To the extent that complete removal of all presently existing architectural barriers is not readily achievable, an order compelling Defendants to make those Amenities available through alternative methods.

71. For injunctive relief requiring that Defendants obtain biennial Certified Access Specialist ("CASp") architectural inspections of the subject facility to verify ongoing ADA compliance and to follow those inspections' recommendations of all readily achievable barrier removal. The first inspection shall occur within 90 days of judgment, or another date certain determined to be just by the Court.

72. For injunctive relief requiring implementation of tenant accessibility policies and requiring annual employee training on providing full and equal access to clients or customers with disabilities. This shall be implemented within 90 days of judgment, or another date certain determined to be just by the Court.

73. For actual damages subject to proof under the Unruh Civil Rights Act and California Disabled Persons Act for each occasion of violation of the ADA and for independent violations of each.

74. For treble actual damages, or in no case an amount less than the statutory minimum damages prescribed by statute for each occasion Plaintiff was denied full and equal access.

75. Reasonable attorney fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205 and Cal. Civ. Code § 52.

Date: May 4, 2023

SEABOCK PRICE APC

_____
Dennis Price
Attorney for Plaintiff

12

Complaint, Shades of Afrika